## THE EQUITABLE LIFE ASSURANCE SOCIETY OF UNITED STATES v. JESSIE HENDERSON CANTWELL et al.

Eastern Section. January 29, 1927.

Petition for Certiorari denied by Supreme Court, July 15, 1927.

1. **Insurance. An insurance company cannot avoid a policy because of false statements of health made upon the application for reinstatement until it is shown the original policy lapsed.**

   Where an insurance company brought an action seeking to cancel a policy on the ground that the insured had made false statements in a statement of health filed with his application for reinstatement of his policy, held that the company must first show that the original policy had lapsed before it could maintain its action.

2. **Evidence. Presumption. Failure to produce a letter held not to raise a presumption that the letter contained evidence supporting defendant's contention.**

   In an action to cancel a life insurance policy where the disputed question was whether it had lapsed or not and the beneficiary contended that the agent of the insurance company had extended time for payment held that the fact the company failed to produce one letter from the agent to it did not raise a presumption that the letter contained an admission of the extension of time by the agent.

3. **Evidence. A statement made by one of the parties will overcome any rule of presumption of evidence in his favor.**

   In an action on a life insurance policy where it was contended that the policy had lapsed and there was no evidence to show when the money was actually paid but the insured had filed a statement for reinstatement held that his signed statement will rebut the presumption that the money was received before the policy lapsed.

4. **Estoppel. Insurance company held not estopped to bring action for cancellation of policy because of death of insured.**

   Where under the law an insurance company had one year from the time of learning of misrepresentation on the part of the insured to bring its action to cancel the policy held that the fact the company did not act immediately, but waited five months until after the insured died was not sufficient to estop the company from bringing its action. It could bring the action any time it saw fit within the year unless it did some act to deceive the insured.

5. Insurance. An insurance company is not charged with knowledge acquired by its agent while not acting in the course of his employment.

The fact that the local agent when not engaged in the duties of the company heard that the insured had been sick, is not notice to the company when the insured is comparatively well and in good health when the agent delivered the policy.

6. Insurance. Limitation of actions. Where policy provided that it shall be incontestable after one year from its date of issuance, the date of a policy governs, and not the date of the payment of the premium.

Where a policy provided that it should be incontestable after one year from its date of issuance and the action was brought within a year from the date of the policy but after the expiration of a year from the date that the premiums were paid held that the action came within the provisions of the policy.

7. Insurance. Insurance company can not avoid a policy on the ground of false statements made by the insured unless such statements are attached to and made a part of the policy.

Under Chapter 457, Acts of 1907 an insurance company cannot avoid a policy on the ground of false representations on the part of insured unless the statements are attached to and made a part of the policy.

8. Insurance. Statements for reinstatement need not be attached to the policy.

Where a policy has been permitted to lapse and the company requests a statement of health before reinstating the policy it is not necessary that these statements be attached to the policy if the old policy is simply reinstated and a new contract is not made.

9. Insurance. If a new policy is issued instead of reinstating the old policy the statute applies.

Where an insurance company issued a new policy giving it a new date and a new number to take the place of a lapsed policy, held that the company could not avoid the policy because of misrepresentations of the insured in his application for reinstatement because they were not attached to and made a part of the policy as required by statute.

10. Insurance. Evidence. Evidence held to show a new contract and not the reinstatement of an old policy.

In an action to cancel a life insurance policy where the evidence showed that the original policy was issued in connection with a loan and that the policy lapsed and that then the loan was paid up and in accordance with the requirements of the company the life insurance policy was extended for eighteen months and a new policy bearing a new number, a different rate of premium, and a different method of payment of premium, was issued, held that the company could not avoid the policy because of misrepresentations on the part of the insured since they were not attached to the policy as required by statute.

Appeal from Chancery Court, of Grainger County; Hon. Forrest Andrews, Special Chancellor.

Affirmed.

Samuel Bosworth Smith, of Chattanooga, for appellant.

McCanless, Taylor & Bell, of Morristown, and Cates, Smith, Tate & Long, of Knoxville, for appellee.

PORTRUM, J. This contest is over the payment of a life insurance policy on the life of James A. Cantwell, deceased.

On October 26, 1921, James A. Cantwell took out a policy of insurance on his life in the sum of $2,900, in conjunction with a loan he obtained from the Insurance Company for a like amount, the payment of which was secured by a trust deed covering a certain piece of real estate located in Morristown, Tenn., and the policy was taken out as collateral and additional security for said loan. The policy is known and called a Home Purchase Policy, and a borrower is required to take out insurance upon his life or upon some other person's life (we assume in case he is not insurable), as additional security for the loan. The premiums on these policies are payable monthly together with certain installments on the loan, and the payments run over a period of ten years, at which time the loan is paid up. In this case Cantwell paid monthly $40.58 of which $8.76 was applied as a monthly premium on the insurance policy. He was also required to make a deposit upon his application of $6.

Cantwell paid the premiums, that is the installments from which the premiums are deducted, regularly up until March 1, 1923. But the April payment, which was due on the first day of the month, was not paid by Cantwell at the date when due, but the policy provided a period of thirty-one days of grace, and no cash payment was made by Cantwell during this period. So, nothing else appearing, the policy had lapsed. About April 27, and within the period of grace Cantwell went to the local agent of the Insurance Company at Morristown with a view of arranging to pay off the entire loan. Now under the terms of the loan contract the borrower was permitted at the end of three years to pay off the loan at his option, but he was not allowed to pay the loan before three years had run unless he would agree to pay in advance the premiums on the life policy for a period of three years; that is to say the company exacted these premiums by way of a bonus for permitting the payment. So it was not a matter of choice with the insured, but it was imperative that he pay the premiums and carry the insurance for the full term of three years, or otherwise he would not be allowed to make the payment, and in this case, since he had failed to make payment of the April installment he was in default, and the company was at liberty to foreclose under the terms of the trust deed, which would incur an attaching of attorney fees. To avoid these consequences he applied to the local agent and requested the terms and conditions required in order that he might pay and discharge his loan. The local agent wrote to the general agent at Nashville, who made the calculation with interest to May 15, and sent this information to the local agent, who conveyed it to Cantwell. This sum included a premium for the

insured, covering a period of three years, of which eighteen months had then run.

Cantwell procured the money and it was remitted by the local agent to the Nashville agent on May 10 but included interest to May 15. It is not shown when the money was paid to the local agent but he remitted it on the 10th. This information was forwarded to the Home Office at New York. The Home Office then entered the funds on their books discharging the loan and rendering a statement to W. C. Watts, cashier of the company at Nashville, showing payment of the balance of principal on the loan and interest, and also the payment of one year and six months premiums, which made the total amount due $2,726.07, and the remittance being $2.57 greater, the difference was directed to be refunded. Said statement further says:

"The mortgage paper will be sent to you as soon as release is prepared." It concludes: "Before a changed life insurance policy will be forwarded through the regular channel, declaration of health is necessary, as premiums are not paid to April 1st."

This last statement means that the policy had lapsed because the payment of premium due April 1st had not been made during the days of grace, and before the changed policy could be forwarded, a declaration of health was necessary. This information was conveyed to Mr. Cantwell when he signed the paper called "A Request For Reinstatement Of Policy." It reads as follows:

REQUEST FOR REINSTATEMENT OF POLICY
TO THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE
UNITED STATES

| I James A. Cantwell | of Morristown | | Tenn. |
|---|---|---|---|
| Name of Insured | City | County | State |

hereby apply for the Reinstatement of Policy No. 4916312 issued by the said Society upon my life and now lapsed because of the nonpayment of premium due on the—day of——19—

I hereby certify that I am in good health; that except as stated below, I have had no illness, have not consulted any physician or practitioner and .have not been a patient in any hospital or sanitarium within the last five years; and that the health record of my family is unchanged.

I hereby agree that if the above numbered policy is reinstated by the Society, such reinstatement shall be based upon the good faith of this declaration, which is personally signed by me; and that the reinstatement if granted shall not take effect until all premiums in arrears, with interest, have been duly paid during my continued good health.

Note here any exceptions.
Dated at Morristown, Tenn. 5/25/23
                    (Signature) James A. Cantwell
                    (of Insured)

Upon receipt of this request the company issued policy #2,882,-941, which is the policy sued on in this case. This policy does not change the age of the insured nor the face value. It bears this endorsement: "Executed the 26th day of October, 1921, at the Home Office of the Society, New York. Re-written May 29, 1923," followed by the signatures of the officers. It was delivered to the insured by the local agent at Morristown, around May 29th.

Mr. Cantwell also carried a straight life policy of insurance with the same company. This policy contains special provisions regarding double indemnity and total and permanent disability, which provides in case insured becomes permanently disabled the company waives payments of premiums and will pay to the insured an income of $600 per year, payable monthly. The face value of the policy was $6,000. In August, 1923, after the insured had made the declaration of health on May 25, he made application to the company for the payment of the income as stated because of his total and permanent disability. In this statement he answered the following questions:

"Give complete history of all illness which you have had since the policy was issued."

"Catarrh of throat and lungs, Jan., 1922; general weakness ever since."

Again he was asked: "State the date you were obliged to give up work and the name of your employer at that time."

"Have been doing some work since first of illness, but against advice of my physician."

And in conclusion he stated: "On the 8th day of September, 1922, I became wholly disabled as a result of typhoid fever, was confined to bed and room until December 30, 1923 (1922) have not been able to work since, in consequence of which I have been wholly disabled since the 8th day of September, 1923 (1922) and will be permanently, continuously and wholly prevented thereby from persuing any and all gainful occupation; and by reason of such disability I now make claim for the protection in the event of total and permanent disability, as provided in my said policy."

This statement was sworn to on the 13th day of August, 1923, before a Notary Public, and was signed by James A. Cantwell. Upon this application Mr. Cantwell was allowed and received income payments from this policy up until his death, Jan. 17, 1924. Upon the death of the insured, proofs of death was made under each policy. The company paid the $6,000 policy but declined to

pay the $2,900 policy for the reason that Mr. Cantwell had permitted the original policy to lapse; and in his declaration of health statement he falsely and knowingly reported his health to be good when, as a matter of fact, he was suffering from tuberculosis and otherwise disabled.

The company on the 12th day of May, 1924, filed a bill in the chancery court for the purpose of cancelling the policy on the grounds of fraudulent and untrue statements contained in the declaration of health, and in order to obtain affirmative relief within the one year contestable period. The defendant answered the bill, putting at issue the questions raised, and also filed a cross-bill, seeking to recover the face value of the policy with interest.

The cause went to the rules for proof, and in due time was prepared and heard by the Hon. Forrest Andrews, sitting as Special Chancellor in lieu of the regular Chancellor, who is of counsel in this suit. The court prepared and filed an opinion setting forth his views and also his findings of fact. He holds that the issuance of the second policy, #2882941 was the making of a new contract and not the reinstatement of the old. And since the company failed to make the declaration of health a part of the new contract by attaching it thereto, as is required by the statute of this State, in case the company desired to defend because of the falsity of any statement contained therein, the company then cannot rely upon the false statements made in the declaration of health; and therefore, the beneficiary named in the policy is entitled to recover. From the decree the company has appealed to this court and assigned error. The assignments are numerous, consisting of restatements and statements from different angles of the same questions. The questions raised will be dealt with without reference to the assignments.

Before the position of the company is tenable it must appear that the original policy lapsed, and the statement of health was in fact necessary before it can rely upon the declaration made in the statement. The company says that the policy lapsed because the premium was due April 1st, and was not paid then nor within the thirty-one days of grace, but was tendered on May 10th, and held by the company pending final action upon receipt of the declaration of health. The beneficiary combats this insistence upon several grounds. The first is that her husband, Mr. Cantwell interviewed the local agent, Mr. Hurst, on the 27th day of April, which was prior to the expiration of the days of grace, and that he agreed to extend the time for the payment of premiums until the insured could get the money to pay the entire loan, on or about May 15th; and that this agreement was binding upon the company. No such agreement is proven by Mr. Hurst, and Mr. Cantwell is

dead; but Hurst wrote a letter to the general agent at Nashville, and by reason of the contents of this letter the general agent calculated the amounts due to discharge the loan. Therefore, it is insisted that this letter contained admission from the agent, Hurst, of the agreement to extend the time; and since this company keeps a record by photostatic copies of all letters received, and it produced every letter, or a copy of every letter pertaining to this affair except this particular letter, for this reason the court should conclude that the letter contained the admission, and find as a fact that such agreement was made. The court can rely upon a presumption only in the absence of other evidence. No authority is cited, and we know of none authorizing this court to disregard the evidence of Hurst, and because of the absence of the letter in question, raise a presumption that it was suppressed and another presumption that it contained an admission that he had made in the name of the company an agreement with Cantwell to extend the time, and thereby deceive and mislead Cantwell to his injury.

It is next insisted that since the thirty-one days of grace expired on May 2nd, and there being no evidence in the record when Cantwell turned the money over to Hurst, further than the statement that the money was remitted to Nashville on the 10th of May, then the court, to avoid a forfeiture, which is not favored, will presume that Cantwell paid the money during the period of grace. The court will not raise this presumption in the face of Mr. Cantwell's signed statement that the policy had lapsed because of nonpayment of premium. Had he paid the premium within the days of grace he would not have made the statement. Mr. Hurst testified that the policy had lapsed. The testimony was excepted to but abandoned.

And again it is said that since Cantwell in a few weeks after he made the statement concerning his health, advised the company in his application for disability income, the status of his condition, and in the same paper advised them of this policy; and with this information they waited until Cantwell was dead, a period of about five months, and brought this suit—after his mouth was closed, and for this reason the company should be estopped because of its laches.

Under the terms of the contract the company had only a period of one year within which to bring its suit, and it should have all this time unless its conduct is peculiarly misleading with intent to cause damage to the insured. We do not think that the company should be restricted to the lifetime of the insured, if he die within a year, and the fact that the insured died within a year ought not to cut down the contestable period unless the company did something to deceive the insured. In this case, had the insured lived

he could not have denied that he made the false statements in his declaration of health; and it is only assumed by counsel that he might have testified to an agreement with the local agent to extend the time, but then he would have been confronted with his statement that the policy had lapsed because of nonpayment of premium, and would have found himself in a dilemma.

The fact that the local agent, when not engaged in the duties of the company, heard that the insured had been sick is not notice to the company when the insured is comparatively well and in good health when the agent delivers the policy, as in this case.

"But, unless actually communicated the company is not chargeable with knowledge which an agent acquires while not acting in the course of his employment, or which relates to matters not within the scope of his authority." 32 Corpus Juris, page 1070.

The policy provides that it shall be incontestable after one year from its date of issuance. It is insisted that the company received the past due premiums on May 10, 1923, and brought this suit on May 12, 1924, which was not within the year. The new policy was dated May 29, 1923; and since it provides the period shall run from the date of issuance, and the provision is not in conflict with our statute the courts are bound by the period as fixed by the policy, and the suit was brought within time. Able argument was directed to the point that since the policy was rewritten with the original dates, and the contestable period ran from the date of issuance, then the period had expired one year after the original policy was issued and the suit could not be maintained. This question will not be discussed, but the consideration of questions to follow will indicate the disposition the court would have made of this question.

Reverting now to the argument advanced by counsel representing the company. It is said the Special Chancellor was in error in holding that the rewritten policy was a new policy and not the continuance of the old reinstated. And since he was in error here and the policy was a reinstated lapsed policy, then the company could rely upon the declaration of the insured, even though not attached and made a part of the policy, and defend upon the ground of false representation. In support of this contention the case of Linder v. Metropolitan Life Insurance Co., 148 Tenn., 236, is cited: In that case a policy had been issued to a negro girl who paid the first premium and permitted the policy to lapse; later, and while she was suffering with tuberculosis, she applied to the company for a reinstatement of the policy; and she made a false declaration of the condition of her health. Upon trial of the case the company defended because of the falsity of the statements, and the plaintiff countered because the written request for reinstatement of the policy was not attached and made a part of the policy, as is required by our statute. Chapter 441, Acts of 1907, provides:

"Every policy of insurance issued to or for the benefit of any citizen or resident of this State on or after the first day of July, 1907, by any insurance company or association doing business in this State, except fraternal beneficiary associations operating on the assessment plan, shall contain the entire contract of insurance between the parties to said contract, and every such contract so issued shall be held as made in this State and construed solely according to the laws of this State."

Section 1, chapter 457, Acts of 1907, provides that no policy of insurance shall be issued in the State, or be issued by a Life Insurance Company organized under the laws of this State unless the same shall contain the following provisions:

Subsection 4. "That all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and that no such statement shall avoid the policy unless it is contained in a written application, and a copy of such application shall be indorsed upon or attached to the policy when issued."

The court held that neither of these statutes was applicable to the case for the reason that they dealt with the original issue and not with the reinstatement of a lapsed policy. The court says:

"The question of reinstating a lapsed policy is not dealt with by our statutes, and is therefore governed by the common law, and, it not being required by the common law that such application shall be made a part of or attached to the policy, defendant is not precluded from relying upon the misrepresentations made therein as a defense to the policy sued on."

The question then presented in this case in view of the authority above cited is: Is the policy #2882941 a new policy or only a renewal or reinstatement of policy #4916312, issued October 26, 1921? If it is but the reinstatement of the original policy which had lapsed, then it was not necessary that the request for reinstatement be attached thereto, under the provisions of the statute above quoted, but if it is a new contract, then it is necessary that the request for reinstatement be attached and to be made a part of the contract before the company can rely upon the falsity of the statements contained therein as a defense to the contract.

The ordinary policy, lapsed while in the possession of the insured, is renewed by the company upon request without calling in the policy or making any notations thereon. The satisfactory proof of insurability and the payment of the premiums was all that was necessary, and when this is done the policy is revived, and nothing appears upon its face to indicate that it had ever lapsed. Under these circumstances then if the holder desired a change in the method of the payment of premiums, and sent the policy in and it was rewritten for the sole reason of changing the method of pre-

mium payments as requested, then the case would be an ordinary renewal of the same contract; and if this contract meets this test, counsel's position is correct.

But upon examining the papers which were incident to its issuance and issued simultaneously with it, it is found that the parties contemplated the cancellation of the original policy upon the payment of the debt, and the writing of a new policy, expressed in the assignment of the policy as collateral security, which is a form prepared by the company. We find the intention of the parties expressed as follows:

"It is understood and agreed however, that when said load has been fully paid and satisfied, if said policy be then in force and the insured or any other party in interest shall desire to continue same, the premium shall thereafter be based quarterly, semi-annually or annually as may then be agreed, instead of monthly, and the society is hereby authorized and requested in that event to cancel said policy and to issue in place thereof, a new policy similar in form with the same register date and for a like amount, but with premiums payable quarterly, semi-annually or annually in an amount to be determined according to the society's rules governing such payments."

If the original policy had not lapsed the new policy would issue as a matter of course without medical examination and applications on the original policy, but the original policy had lapsed and under the terms of the contract it was to be canceled upon the payment of the debt. And since the statement of May 16, stating "The mortgage papers will be sent you as soon as release is prepared," shows that the debt was paid and the mortgage satisfied prior to the reinstatement of the policy, and the policy itself shows that it was cancelled. The statement of May 16, states that the new policy will be forwarded through the regular channel upon receipt of declaration of health. We hold from this that the new policy was issued upon the written request for reinstatement and was not based upon the original policy which had lapsed before the payment of the loan, and under the terms of the contract was to be canceled upon payment of the loan.

We are further of the opinion that this is a new contract and not a renewal of the old one because the number of the contracts are not the same and the amounts payable are not the same, because as is shown, the insured paid $8.76 per month during the first eighteen months, paying a total of $157.68, where under the new contract he was only credited $143.29. No explanation was made why the rate should be higher for the first eighteen months when the original contract was alive, and why in the new policy he was only credited $143.29 when he had in fact paid $157.68. This may have been

satisfactorily explained, but it shows that the contracts are not the same and the issuance of the second contract was not the renewal of the first but was the making of a new contract as they agreed they would do.

We think the contract being a new contract and based not upon the original contract which had lapsed and which, under the terms was canceled upon payment of the debt, but based upon request for reinstatement made after the original contract was at an end. This being true, then under our statute the Insurance Company cannot rely upon the falsity of the statements made in the request for reinstatement, since it was not made a part of the policy.

But, independently of our statute the company cannot rely upon the falsity of the statements because under the terms of the contract issued after the statement was made and in the possession of the company it issued the contract, which makes no reference to the old contract, in terms and carrying this provision:

The contract: "This policy, and the application therefor, a copy of which is endorsed thereon or attached hereto, constitutes the entire contract between the parties. All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall avoid this policy or be used in defense of the claim thereunder, unless contained in the written application therefor and a copy of such application is endorsed thereon or attached thereto when issued."

We think this provision precludes the company since we treat the policy as a new and not a renewal contract. Counsel insists that even if this be true, still the policy is void because it does not take effect unless delivered during the good health of the insured, that is, the contract is not to take effect unless the insured is well when it is delivered to him. Ordinarily there is such a provision in the contract, but upon close examination of the present contract we find no such provisions. It is true that such a provision is found in the request for the reinstatement of the policy but since this is not attached to the policy, then under the terms of the policy it is not a part of it. As stated, the Chancellor entertained these views and granted a recovery, and his decree is affirmed at the cost of the appellant and the bondsmen.

Snodgrass and Thompson, JJ., concur.